# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

—————————————

N° 09-CV-4095 (JFB)(AKT)

—————————————

SOUNDVIEW ASSOCIATES,

Plaintiff,

VERSUS

TOWN OF RIVERHEAD; TOWN BOARD OF RIVERHEAD; PLANNING DEPARTMENT OF THE TOWN OF RIVERHEAD; RICHARD EHLERS, INDIVIDUALLY; DAWN C. THOMAS, INDIVIDUALLY; AND JOHN DOES AND/OR JANE DOES #1-6, INDIVIDUALLY AND PERSONALLY,

Defendants.

—————————————

**MEMORANDUM AND ORDER**
July 14, 2010

—————————————

JOSEPH F. BIANCO, District Judge:

On September 23, 2009, plaintiff Soundview Associates (hereinafter "plaintiff," "Soundview," or "Soundview Associates"), brought this action against defendants Town of Riverhead (hereinafter "the Town" or "Riverhead"), Town Board of the Town of Riverhead (hereinafter "the Town Board"), the Planning Department of the Town of Riverhead (hereinafter "the Planning Department"), Richard Ehlers, Dawn C. Thomas, and John Does/Jane Does #1-6 (collectively "defendants"), pursuant to 42 U.S.C. §§ 1983 and 1988 alleging, *inter alia*, that defendants violated plaintiff's substantive and procedural due process rights under the Fifth and Fourteenth Amendments and violated plaintiff's First Amendment rights. In particular, plaintiff asserts that the defendants violated its constitutional rights, when, among other things: (1) in 2003, defendants deprived plaintiff—in an arbitrary and capricious manner—of the ability to build a health spa on a 191-acre site in Riverhead despite the existence of a 1982 Special Permit that allowed such construction; and (2) defendants wrongfully conditioned the processing of a separate application to construct a clubhouse on the property by another company on plaintiff's withdrawal of its continuing application with the Town of Riverhead for the health spa, as well as plaintiff's withdrawal of a pending state court

action challenging the 2003 health spa decision. Plaintiff contends that these actions violated its constitutional rights.

Presently before the Court is defendants' motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the motion in part and denies the motion in part. Specifically, the Court grants defendants' motion to dismiss plaintiff's claims under the Fifth Amendment. The Court also grants defendants' motion to dismiss claims against the Town Board and the Planning Department because they are duplicative of the claims raised against the Town of Riverhead. The Court denies defendants' motion to dismiss all of plaintiff's other claims.

## I. BACKGROUND

### A. Facts

The following facts are taken from the complaint ("Compl."). These facts are not findings of fact by the Court but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

Plaintiff brought the instant complaint pursuant to 42 U.S.C. §§ 1983 and 1988 for redress of violations of plaintiff's right to petition the government for the redress of grievances under the First Amendment and the plaintiff's rights to due process under the Fifth and Fourteenth Amendments. (Compl. ¶ 1.) According to the complaint, plaintiff is the owner of a 144-acre parcel of real property located on the north side of Sound Avenue and east side of Oakleigh Avenue, in Baiting Hollow in the Town of Riverhead, which is described as "Suffolk County Tax Map Parcel

Number 0600-40-02-6.3" (hereinafter "the subject property"). (*Id.* ¶ 20.) Soundview intended to construct a health spa on 2.752 acres of the subject property. (*Id.* ¶ 21.)

### 1. History of the Property

The Town Board of Riverhead exercises authority to determine applications for Special Permits and Site Plan approval within the Town. (*Id.* ¶ 23.) On December 15, 1981, the Town of Riverhead adopted Article XXV of Chapter 108 of the Town Code to create a Recreational Use District; in that district, certain uses were permitted as of right, including but not limited to "marinas and resorts," "golf clubs," and, by special permit, "motels and boatels" and "any other recreational use," and accessory uses, such as "health spas, taverns, restaurants, and retail stores." (*Id.* ¶ 24.) On January 26, 1982, Riverhead Flagg Corporation, Soundview Associates' predecessor-in-interest with respect to the subject property, petitioned the Town of Riverhead to change the zoning of its 191-acre site (hereinafter the "Flagg Site") to Recreational Use and requested a Special Permit to construct condominium units and make other improvements on the Flagg Site. As part of that petition, the Riverhead Flagg Corporation noted that its contract-vendee intended to continue using and operating the golf course, tavern, restaurant, and retail store on the Flagg Site and wished "to utilize the premises for the purposes of a health spa." (*Id.* ¶ 26.) On November 3, 1982, the Town Board of Riverhead adopted Resolution No. 680, which directed the Town Clerk to amend the Town's official zoning map to include the Flagg Site in the Recreational Use district. (*Id.* ¶ 28.) Resolution No. 680 also granted a Special Permit "to run with the land to construct a 300-unit condominium complex, including tavern, restaurant, and retail store,

and health spa, subject to the requirements, restrictions, and/or limitations of the Riverhead Town Code" and noted that "covenants and restrictions stating that the 191-acre parcel shall not be further improved shall be filed with the County Clerk in a form and manner acceptable to the Town Board after review by the Town Attorney" and are subject to waste water treatment in a manner approved by the Suffolk County Department of Health. (*Id.* ¶ 29.) This Special Permit ran with the land, had no expiration date, and, according to plaintiff, was at no time revoked by the Town of Riverhead. (*Id.* ¶ 44.)

On March 22, 1983, the Town Board adopted Resolution No. 161, which approved a site plan for the condominium units; however, the resolution did not include the location of the proposed health spa. (*Id.* ¶ 30.) On July 5, 1983, the owners of the subject property proceeded with construction of the condominiums but did not obtain site approval for or begin construction of the health spa. (*Id.* ¶ 31.) On April 19, 1984, Baiting Hollow Development Corporation, another one of Soundview Associates' predecessors-in-interest with respect to the subject property, executed a Grant of Scenic Easement with the Town of Riverhead. (*Id.* ¶ 32.) This easement granted a "recreational scenic and conservation use easement" on the Flagg Site. (*Id.*) The Grant of Scenic Easement restricts the use and development of the Flagg Site to the following:

a. golf club and golf course open to public or private membership, as the case may be;

b. golf club and golf course facilities including, but not limited to, restaurant, public or private, separate catering facilities and tavern;

c. jogging paths, cycling paths, riding paths;

d. retail stores specializing in golf, tennis and swimming equipment and apparel, limited to not more than one of each such store;

e. any other compatible recreational uses.

(*Id.* ¶ 33.)

On December 17, 1986, Soundview Associates acquired the subject property and all of the rights, permits, benefits, and privileges therein from predecessor-in-interest Baiting Hollow Development Corporation. (*Id.* ¶ 34.) On February 28, 1989, the Town Board of Riverhead adopted Resolution No. 184. That resolution approved a site plan for additions to the clubhouse for restaurant use and creation of a lined pond, all within the easement area. (*Id.* ¶ 35.) In May 1992, Soundview Associates requested and received permission to modify the boundary of the easement area to allow the construction of some of the approved residential condominium units within the easement area. (*Id.* ¶ 36.) The easement area was thereafter amended to remove some property from the easement area and to include certain other property within the easement area. (*Id.* ¶ 37.)

In 1996, Soundview Associates leased the golf course on the subject property to Rugby Recreational Group, LLC (hereinafter "Rugby"); the lease gave Rugby an option to purchase the golf course for $10 million. (*Id.* ¶¶ 38-39.) The lease also reserved a seven-acre parcel for Soundview Associates; the intended use of that parcel was the development and construction of the health spa. (*Id.* ¶ 41.)

### 2. 2002 Permit and Site Plan Applications

In early 2002, Soundview Associates applied for a special permit to construct a health spa on 2.572 acres of the subject property. (*Id.* ¶¶ 47, 50.) The proposed health spa was to be serviced by public water and by a private septic system, subject to the approval of the Suffolk County Department of Helath Services. (*Id.* ¶ 51.) On March 5, 2002, the site plan and special permit applications were deemed complete, and the Town Board classified the project as an "unlisted action" pursuant to the New York State Environmental Quality Review Act (hereinafter "SEQRA"). (*Id.* ¶ 52.) Soundview Associates' 2002 special permit application was referred to the Planning Department of the Town of Riverhead (hereinafter "Planning Department"). (*Id.* ¶ 53.) On June 20, 2002, the Planning Department issued a resolution recommending that the special permit application be denied because the Planning Department deemed a health spa to be a use that was inconsistent with the easement grant. (*Id.* ¶¶ 55-56.)[1] On September 17, 2002, the Town Board held a public hearing regarding the application for a special permit. (*Id.* ¶ 60.) After the hearing, Soundview Associates' engineers confirmed that the proposed health spa project was within the approved waste-water flow parameters and would comply with the Suffolk County Sanitary Code and require Suffolk County Department of Health Services approval. (*Id.* ¶¶ 62-63.)

According to the complaint, on November 3, 2003, the Town Board of Riverhead adopted a new "Master Plan" for the Town, which recommended that resorts and spas or other overnight accommodations located on a private campus and in combination with a golf course or other recreational facilities should be promoted in order to encourage tourism. (*Id.* ¶ 64.) However, on November 18, 2003, the Town Board adopted Resolution No. 1261, which denied Soundview's application for a special permit to construct the health spa. (*Id.* ¶ 65.)

### 3. Soundview's State Court Action

On March 18, 2004, Soundview Associates commenced an Article 78 proceeding in the Supreme Court of the State of New York, County of Suffolk, against the Town of Riverhead and the Town Board, requesting an order annulling Resolution No. 1261, an order compelling the Town Board to process Soundview's application and a declaratory judgment decreeing that the easement grant did not prohibit the proposed health spa. (*Id.* ¶ 66.) The Town of Riverhead filed a motion to dismiss Soundview's complaint; the Supreme Court denied the motion, except as to Soundview's cause of action to compel the Town to process Soundview's application. (*Id.* ¶¶ 68-69.) The Supreme Court recognized that the easement grant allowed for "other compatible recreational uses," and the evidence submitted did not negate the creation of a health spa as part of this definition. (*Id.* ¶ 71.) On February 2, 2005, the Town filed a renewed motion to dismiss based on the fact that it had implemented a Comprehensive Plan that re-zoned the entire Town, including the subject property; therefore, the Town argued that it was impossible for Soundview to receive the relief it was seeking, as the entire subject property was now zoned as residential. (*Id.* ¶¶ 73-75.) On April 25, 2006, the Supreme

---

[1] On August 6, 2002, the Town Board adopted Resolution No. 858, which added "country inns" as an additional permitted use in the Recreational Use district. (*Id.* ¶ 42.)

Court granted the motion to dismiss on that basis. (*Id.* ¶ 77.)

## 4. Rugby's Option to Purchase the Golf Course

Based on the option that Rugby was provided in its lease, Rugby intended to purchase the golf course on the subject property. Prior to preparing to exercise its option, Rugby's principals acquired a second parcel of property, contiguous to the golf course parcel. (*Id.* ¶ 79.) Rugby intended to construct a new clubhouse on the ten-acre parcel being added to the golf course parcel and, thus, filed an application for a permit for the construction thereof. (*Id.* ¶¶ 81-82.) At the same time, Soundview perfected its appeal of the Supreme Court's dismissal of its petition to the Appellate Division. (*Id.* ¶ 83.)

According to the complaint, at that point in time, the Town of Riverhead—specifically, defendant Richard Ehlers, the lawyer for the Planning Department, and defendant Dawn C. Thomas, the Town attorney—threatened Rugby's representatives that if Soundview did not withdraw its appeal and its applications for construction of the health spa, Rugby's applications for the clubhouse would be denied. (*Id.* ¶¶ 84-85.) Plaintiff further alleges that the Town—per defendants Ehlers and Thomas, who acted at the direction of John Does/Jane Does #1-6—stated that no further development of the property would be permitted unless Soundview agreed to amend the special permit by removing the language that provided for construction of a health spa on the property retained by Soundview. (*Id.* ¶ 86.) Soundview contends that, due to the pressure that it felt because Rugby's option to purchase was nearing its expiration date and because Rugby would not have closed on the option without the approval of the new

clubhouse, Soundview acceded to the Town's demands. (*Id.* ¶¶ 88-94.) Shortly thereafter, the Town adopted a resolution amending the 1982 Special Permit that permitted Soundview to construct the proposed health spa, and the Town approved and processed Rugby's applications for its clubhouse. (*Id.* ¶¶ 95-96.)

## B. The Instant Complaint

Plaintiff brings three causes of action against defendants arising out of the events detailed above. First, plaintiff contends that defendants' actions violated plaintiff's clearly established First Amendment right to petition the government for the redress of grievances. Specifically, plaintiff contends that its right to petition government for the redress of grievances encompasses the plaintiff's clearly established right to file an appeal to the Appellate Division, and that this clearly established right was interfered with by defendants' actions when they unlawfully coerced plaintiff to abandon its right to appeal by threatening to withhold the processing of Rugby's land use application.

Plaintiff also brings a procedural due process claim through § 1983 under the Fifth and Fourteenth Amendments of the U.S. Constitution. Specifically, plaintiff alleges that the 1982 Special Permit to develop a health spa on the subject property was a property right of which plaintiff was deprived without procedural due process. Plaintiff's final claim alleges a substantive due process violation under the Fifth and Fourteenth Amendments of the U.S. Constitution; specifically, plaintiff alleges that it was deprived of constitutionally protected property rights and liberty interests, including, *inter alia*, the right to enjoy unfettered use of its property and the 1982 Special Permit.

Plaintiff alleges it was deprived of these rights by defendants in a manner that was arbitrary, capricious, and deliberate.

### C. Procedural History

Plaintiff filed the complaint in this action on September 23, 2009. On December 14, 2009, defendants filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss the action. A pre-motion conference for the anticipated motion was held on January 8, 2010. On February 8, 2010, defendants filed their motion to dismiss. Plaintiff filed opposition papers on March 8, 2010. On March 19, 2010, defendants submitted their reply. Oral argument was heard on May 26, 2010. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. --- U.S. ---, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003)

(internal citations omitted), *aff'd in part and vacated in part on other grounds sub nom.*, *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of N.Y.*, No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 10865, at *9-10, 2005 WL 1139908 (E.D.N.Y. 2005) (stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

## III. DISCUSSION

### A. Standing

"Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (citing U.S. Const. art. III, § 2 and *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471-72 (1982)). "It is axiomatic that '[t]here are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision.'" *Id.* (quoting *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009)); *see also Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 373 (2d Cir. 2004) ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant." (citations and quotation marks omitted)).

To meet Article III's injury in fact requirement, plaintiff's alleged injury "'must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see, e.g.*, *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (finding that plaintiffs had adequately articulated Article III injury by alleging that they have paid higher tolls as a result of defendant's policy). Furthermore, the alleged injury must "affect the plaintiff in a personal and individual way to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." *Baur*, 352 F.3d at 632 (internal quotations and citations omitted).

Defendants argue that plaintiff lacks standing to prosecute the instant action because plaintiff executed a contract with Rugby to sell the subject property for $10 million. Because plaintiff consummated this sale with Rugby, defendants argue that plaintiff cannot demonstrate that it suffered any injury that would convey standing to maintain this action. However, according to the complaint, in 1996, when Soundview Associates leased the golf course on the subject property to Rugby, it reserved a seven-acre parcel for itself. Soundview intended to build the health spa on that seven acre parcel. The injury that Soundview alleges is that its

application for a special permit to construct the health spa was wrongfully denied. Although defendants' reply contends that plaintiff sold the entire subject property to Rugby, plaintiff denies that this was the case.[2] In short, on a motion to dismiss, the Court must assume the veracity of the facts alleged in the complaint and construe all facts in a light most favorable to plaintiff, the non-moving party. Soundview alleges that it retained the rights to certain property specifically to build a health spa and that the actions of defendants prevented Soundview from constructing that health spa; thus, Soundview has alleged sufficient injury to confer standing on itself for the purposes of the instant action at the motion to dismiss stage.

## B. Section 1983

Plaintiff brings three claims pursuant to § 1983. Specifically, plaintiff alleges: (1) substantive due process claims under the Fifth and Fourteenth Amendments; (2) procedural due process claims under the Fifth and Fourteenth Amendments; and (3) violations of the First Amendment right to petition the government for the redress of grievances. The Court addresses each of these claims in turn.

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983.[3] "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). As set forth below, the Court denies defendants' motion to dismiss with respect to each of their claims, except to the extent that plaintiff brings claims under the Fifth Amendment, as discussed below.

### 1. Fifth Amendment Claims

As a threshold matter, although plaintiff brings its claims pursuant to both the Fifth Amendment and the Fourteenth Amendment, plaintiff fails to sufficiently state a claim for relief under the Fifth Amendment. First, plaintiff fails to adequately state a claim for an unconstitutional taking under the Fifth Amendment because plaintiff has not alleged that it has been denied all economically viable uses of the subject property. *See Penn Cent.*

---

[2] At oral argument, plaintiff's counsel asserted that, even with the sale of the property, plaintiff retained the ability under the sales agreement to build the health spa on the property.

[3] Specifically, Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

*Transp. Co. v. N.Y. City*, 438 U.S. 104, 138 n.36 (1978); *Park Ave. Tower Assocs. v. City of N.Y.*, 746 F.2d 135, 139 (2d Cir. 1984) ("More recently, this court rejected the notion that loss of profit—much less loss of a reasonable return—alone could constitute a taking. In *Sadowsky v. New York*, 732 F.2d 312 (2d Cir. 1984), the court stated that 'regarding economic impact, it is clear that prohibition of the most profitable or beneficial use of a property will not necessitate a finding that a taking has occurred.'"). Moreover, to the extent plaintiff attempts to bring its due process and takings claims under the Fifth Amendment, its reliance is misplaced. The Fifth Amendment regulates due process violations by federal actors. The complaint alleges violations by the Town of Riverhead, its administrative arms, and its employees—state actors to whom the Fifth Amendment is applicable only through the Fourteenth Amendment. Thus, the Court construes plaintiff's claims as brought under the Fourteenth Amendment, and plaintiff's Fifth Amendment claims are dismissed. *Kramer v. N.Y. City Bd. of Educ.*, No. 09-CV-1167, 2010 WL 2010462, at *1 (E.D.N.Y. May 20, 2010) ("Plaintiff's reliance on the Fifth Amendment is construed as an invocation of the Fourteenth Amendment, because the latter applies to due process violations or takings by state rather than federal actors."); *Pabon v. N.Y. City Transit Auth.*, No. 06-CV-2859 (RRM)(LB), 2010 WL 1371048, at *8 (E.D.N.Y. Mar. 31, 2010) ("The Fifth Amendment's civil due process component is inapplicable here. *See Abidekun v. N.Y. City Transit Auth.*, No. 93-CV-5600 (FB), 1998 WL 296372, at *2 n.1 (E.D.N.Y. June 4, 1998) ("The Fifth Amendment applies only to the federal government; therefore, allegations of federal action are required to state a claim for deprivation of due process in violation of the

Fifth Amendment."), and is otherwise made redundant by his Fourteenth Amendment claim." (internal citation and quotation omitted)).

2. Substantive Due Process Claim

Plaintiff brings a substantive due process claim, alleging that it was coerced into withdrawing its appeal of the Article 78 proceeding and its special permit and site plan applications due to the Town's threatened refusal to process Rugby's permit applications. The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment "does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005). Instead, the scope of substantive due process is very limited. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The Supreme Court has said that it is "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). Substantive due process is a means of "protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "In order to establish a violation of a right to substantive due process, [after plaintiff demonstrates that it was denied a valid property interest,] a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena*, 432 F.3d at 112 (quoting *County of Sacramento v.*

*Lewis*, 523 U.S. 833, 847 n.8 (1998)). To satisfy this standard, a plaintiff must show that the government decision it challenges "was arbitrary or irrational or motivated by bad faith." *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989). For the reasons set forth below, the Court concludes that plaintiff has adequately stated a substantive due process claim under § 1983.

a. Property Interest

To meet the first prong of the test for substantive due process violations, a plaintiff must show that he has a "valid property interest." *Cine SK8 v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007) (citing *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001)); *see also Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994) ("To formulate a claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must demonstrate that he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest.").

"It is well settled in this Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994). A plaintiff has a "legitimate claim of entitlement" to a particular benefit if, "absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted." *RRI Realty Corp. v. Incorp. Vill. of Southampton*, 870 F.2d 911, 917 (2d Cir. 1989) (citation and internal quotations omitted). An entitlement to a benefit arises "only when the discretion of the issuing agency is so narrowly circumscribed" as to

virtually assure conferral of the benefit. *Id.* at 918.

When a permit has already been granted, "the 'clear entitlement' test no longer [is] applicable to the special permit because the test applies only to permits being sought. The special permit, once issued, unquestionably [is] the property of [the recipient]." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 379 (2d Cir. 1995); *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 461 (E.D.N.Y. 2002) ("The Court finds that at this point in the litigation, the plaintiff has alleged a property interest in the special use permit it seeks for sand mining. According to the amended complaint, state and local law require that mining operations receive a permit from the DEC and a special permit from the Town before any sand mining can occur. The plaintiff further alleges that once a DEC permit has been issued, the Town's sole authority at that point is on the issues of traffic and reclamation.").

As a threshold matter, defendants argue that because plaintiff sold the subject property to Rugby for $10 million, plaintiff cannot demonstrate any injury or loss of property. However, as discussed *supra*, in 1996, when Soundview leased the golf course on the subject property to Rugby, including the option to purchase the golf course for $10 million (*id.* ¶¶ 38-39), the lease reserved a seven-acre parcel for Soundview Associates. These seven acres were not operationally part of the golf course. The intended use of that parcel was the development and construction of the health spa. (*Id.* ¶ 41.) Plaintiff alleges that it had the right to construct a health spa on that subject property due to the 1982 Special Permit that ran with the land and that it was denied this property interest by defendants' actions. Because plaintiff alleges

that this permit had already been granted, the 1982 Special Permit was "unquestionably the property of" Soundview. *See Villager Pond, Inc.*, 56 F.3d at 379. Thus, plaintiff has articulated a valid property interest.

Defendants contend that the plaintiff lacks a property interest because the Riverhead Town Code now prohibits health spas in the zoning district where the subject property is located. (*See* Compl. ¶ 76.) In zoning disputes, defendants argue, "the law as it exists at the time a decision is rendered on appeal is controlling." *D'Agostino Bros. Enters., Inc. v. Vecchio*, 786 N.Y.S.2d 90, 91 (App. Div. 2004). Thus, defendants argue that the New York State Supreme Court correctly held that plaintiff had no right to construct a health spa because the Town Code no longer permitted such a use in the zoning district where the subject property was located. However, there is a "special facts exception" to this general principle; when there is proof of 'special facts' that indicate that the local government acted in bad faith in delaying a landowner's application for a building permit while the zoning law was changed. *See, e.g.*, *Figgie Int'l Inc. v. Town of Huntington*, 610 N.Y.S.2d 563, 566 (App. Div. 1994) (collecting cases). Under this exception, an amended zoning ordinance may not apply under certain circumstances, whereby a petitioner has demonstrated that he was entitled to a permit as a matter of right by full compliance with the requirements at the time of the application and that proper action upon the permit would have given him time to acquire a vested right before the zoning ordinance was amended. *Pokoik v. Silsdorf*, 358 N.E.2d 874, 876 (N.Y. 1976) (citing *Matter of Golisano v Town Bd. of Town of Macedon*, 296 N.Y.S.2d 623 (App. Div. 1968)). As the New York Court of Appeals explained in *Pokoik v. Silsdorf*:

The village used dilatory tactics to discourage petitioner from seeking the building permit to which he was entitled by first refusing to act on his application and, after court proceedings directing it to act, delaying action still further. In addition, when he was finally progressing with his appeal, an amendment was passed which would serve to cut off his rights. This administrative procrastination, calculated to deny a property owner his right to use this land in a currently lawful manner, is supportable neither by law nor by sound and ethical practice.

*Pokoik*, 358 N.E.2d at 876 (citation and internal quotation marks omitted); *see also Figgie Int'l Inc.*, 610 N.Y.S.2d at 566 ("We conclude that the Town's failure to act on the site plan was designed to prevent the plaintiff from developing his property prior to the effective date of rezoning."); *Huntington Ready-Mix Concrete, Inc. v. Town of Southampton*, 491 N.Y.S.2d 383, 385 (App. Div. 1985) (finding application of the special facts exception warranted when "[i]t took 17 months from submission of the application for appellants to issue a decision denying it. Appellants caused this delay, *inter alia*, by telling petitioners to wait for action on their application until after the November 1981 elections, by failing to forward necessary applications to the Town Planning Board as they had represented they would do, by raising objections, when they did meet with petitioners, to various aspects of the plan (which objections petitioners met by modifying the plan), by further inaction and finally by refusal to hold a required public hearing until petitioners retained an attorney who spoke to the Town Attorney").

According to the complaint, plaintiff, vis-a-vis its predecessor-in-interest, became vested with a special permit to, *inter alia*, construct a health spa on the subject property. (*See* Compl. ¶¶ 28-29.) On January 24, 2002, plaintiff filed an application to receive site plan approval to begin construction of that health spa. (*Id.* ¶ 46.) Plaintiff alleges that its permit had no expiration date, ran with the land, and had not been revoked prior to the 2002 application. (*See id.* ¶ 44.) Plaintiff further alleges that, concurrently, it filed an application for a special permit, to the extent necessary, to refine the location and size of the health spa from its initial description in the 1982 Special Permit. (*Id.* ¶ 47.) Plaintiff contends that the Town Board and Planning Department deliberately ignored and failed to process plaintiff's site plan application but recommended that plaintiff's separate special permit application be denied. (*See id.* ¶¶ 47, 52-56.)

Thus, plaintiff has alleged sufficient facts to suggest a plausible claim that the special facts exception may be applicable to the instant case. Specifically, plaintiff has alleged that the Town and its administrative arms acted in bad faith by delaying its application for a building permit while the zoning law was changed. Plaintiff also alleges that the Town and its employees deprived plaintiff of its property interest under the 1982 Special Permit and plaintiff's right to appeal its challenge to the Town's actions by threatening to withhold the processing of land use applications of the plaintiff's tenant without any reason, which would lead to the financial ruin of plaintiff. These allegations are sufficient to satisfy the "property interest" requirement of a substantive due process claim at the motion to dismiss stage.

## 2. Arbitrary or Irrational Infringement on Property Interest

In order to meet the second prong of a substantive due process claim, plaintiff must show "that defendants infringed on [its] property right in an arbitrary or irrational manner." *Cine SK8*, 507 F.3d at 784. In particular, plaintiff must show that the government's infringement was "'arbitrary,' 'conscience shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'" *Ferran v. Town of Nassau*, 471 F.3d 363, 369-70 (2d Cir. 2006); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001) ("As we have held numerous times, substantive due process 'does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit. . . . [Its] standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.'" (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)); *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996) (explaining that plaintiff meets second prong of substantive due process test "only when government acts with no legitimate reason for its decision" (citation and quotation marks omitted)).

Specifically, "[i]n the zoning context, a government decision regulating a landowner's use of his property offends substantive due process if the government action is arbitrary or irrational. Government regulation of a landowner's use of his property is deemed arbitrary or irrational, and thus violates his right to substantive due process, only when government acts with no legitimate reason for its decision." *Southview Assoc., Ltd. v. Bongartz*, 980 F.2d 84, 102 (2d Cir. 1992) (citations and quotation marks omitted); *see*

*also Merry Charters, LLC v. Town of Stonington*, 342 F. Supp. 2d 69, 78 (D. Conn. 2004) (explaining that "denial by a local zoning authority violates substantive due process standards only if the denial 'is so outrageously arbitrary as to constitute a gross abuse of governmental authority'" (quoting *Natale*, 170 F.3d at 263)). For instance, in the context of a substantive due process claim against the Town of Colchester where zoning was at issue, the Second Circuit reversed a grant of summary judgment to the Town where, *inter alia*, it "had no authority under state law" to take certain actions with respect to plaintiffs' "protected property interest in the use of their property." *Brady v. Town of Colchester*, 863 F.2d 205, 215-16 (2d Cir. 1988). The Second Circuit explained that under these circumstances, a "trier of fact could conclude that there was no rational basis for the [Town's zoning board's] actions, and that, as a result, the [zoning board] violated appellants' rights to substantive due process." *Id.* at 216 (citation and quotation marks omitted).

Defendants argue that plaintiff has failed to allege conduct that "shocks the conscience." According to the defendants, the Town was obligated, pursuant to SEQRA and the Site Plan provisions of the Town Code, to analyze and mitigate the potential environmental impacts of Rugby's permit application and environmental impacts of the proposed health spa.

However, plaintiff alleges that it possessed valid property interests of which defendants arbitrarily, irrationally, and unlawfully deprived plaintiff. Specifically, plaintiff alleges that by denying plaintiff's site application to build a health spa—for which plaintiff had the 1982 Special Permit, a vested right—the Town unreasonably, arbitrarily,

and incorrectly reasoned that the health spa use would be inconsistent with the easement grant. Plaintiff alleges that the defendants had no legitimate reason for their decision to deny plaintiff's applications; plaintiff points out that the easement was created with recreation as an express primary purpose, and specifically allowed for a golf club, a golf course, a restaurant, a catering facility, jogging, riding and cycling paths, retail stores, and any other compatible recreational uses. (Compl. ¶ 33.)

In support of its argument, plaintiff points out that the Town Code confirms that, generally, a health spa may be considered a "recreational use."[4] Pursuant to Riverhead Town Code § 48-1, the definition of "Recreation Center" includes "health spas." Pursuant to Riverhead Town Code § 108-3(B), the definition of "Club/Spa" is "an organization . . . for recreational or athletic purposes." Riverhead Town Code § 108-161(B)(7) states that "fully enclosed commercial recreation facilities" include "health spas." Finally, under Riverhead Town Code Chapter 108, Article XLIV allows "health spas and health related facilities" as permitted uses of a "Planned Recreational

_____

[4] Pursuant to Federal Rule of Evidence 201, the Court is permitted to take judicial notice of provisions of the Riverhead Town Code on a motion to dismiss. *See, e.g.*, *Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 451 n.11 (W.D.N.Y. 2009) (taking judicial notice of Webster Town Code); *Nelson v. City of Rochester*, 492 F. Supp. 2d 282, 284 n.1 (W.D.N.Y. 2007) (taking judicial notice of Rochester Municipal Code); *see also* Fed. R. Evid. 201(b)(2) (stating that the court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

Park." Accordingly, plaintiff argues that the denial of a special permit to build a health spa on land that was specifically zoned for recreational uses—including health spas—was arbitrary and irrational.

In addition to plaintiff's allegations regarding the denial of the 2002 permit application, plaintiff alleges that it was unlawfully coerced into abandoning its clearly established rights under the 1982 Special Permit. Specifically, plaintiff alleges that in late 2006, defendant Ehlers and defendant Thomas told Rugby's Manager, Barry Beil, "that the Town would not process Rugby's application for site plan approval of the new clubhouse unless and until Soundview's appeal with the Appellate Division and its applications with the Town for the proposed health spa were withdrawn." (Compl. ¶ 85.) Plaintiff further alleges that Beil was informed by Ehlers and Thomas that no development of Rugby's property would be permitted unless Soundview agreed to amend the 1982 Special Permit to remove the language that would allow construction of the health spa. (*Id.* ¶ 86.)

Accepting all of plaintiff's facts as true and construing them most favorably to plaintiff, the Court concludes that plaintiff has adequately stated a claim for denial of its substantive due process based upon alleged conduct that was "'arbitrary,' 'conscience shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'" *Ferran*, 471 F.3d at 369-70. The Court notes that "later in the litigation it may become clear that the Town does exercise discretion when determining whether to issue a special permit" in a situation such as plaintiff's, and that there was a proper basis for the Town's actions here. *T.S. Haulers, Inc.*, 190 F. Supp. 2d at 462. However, at this early stage in the litigation, without the benefit of detailed information regarding the 1982 Special Permit, the Town Code provisions or other regulations that govern the issuance of a special permit and the operation of the Town Board, the Court is unable to conclude that the plaintiff's claim must fail as a matter of law. The complaint alleges that decisions were made in an absence of discretion and in an arbitrary, irrational, and conscience-shocking manner. Although the Court recognizes that the zoning and permit application process inevitably may involve compromises or alterations to initial plans and permits based upon changed circumstances, the complaint suggests that no such grounds existed for the decisions in the instant case. Instead, plaintiff alleges that the defendants, in bad faith, arbitrarily extinguished plaintiff's clearly established rights to build the health spa under the 1982 Special Permit and then unlawfully coerced and threatened plaintiff into abandoning its permit rights and appeal of the Article 78 proceeding in order that the Town Board would approve the application of a separate applicant—plaintiff's lessee. Plaintiff alleges that these decisions should not have been linked in any way. In short, plaintiff's allegations—namely, that the defendants' actions were arbitrary, conscience shocking, or oppressive in the constitutional sense—are sufficient to withstand a motion to dismiss. *See Ferran*, 471 F.3d at 369-70.

Although the zoning regulations for the subject property were eventually amended to make a health spa a noncomforming use, as the Court of Appeals expressed in *Pokoik*, "administrative procrastination, calculated to deny a property owner his right to use [of] land in a currently lawful manner, is supportable neither by law nor by sound and ethical practice." *Pokoik*, 358 N.E.2d at 876 (citing 1 Anderson, N.Y. Zoning Law &

Practice § 6.17). Plaintiff alleges that defendants delayed plaintiff's site plan application for almost two years. Plaintiff further alleges that defendants' denial of its later request for a permit and its site plan application were the result of bad faith arbitrary and dilatory conduct by defendants. As discussed *supra*, plaintiff has, at this stage, alleged sufficient facts to suggest that the special facts exception may be applicable to its claim and has therefore stated a plausible claim for violation of its substantive due process rights under § 1983. *See, e.g., Serfecz v. Gallitano*, No. 95 C 5140, 1996 WL 6557, at *5 (N.D. Ill. Jan. 5, 1996) (denying motion to dismiss substantive due process claim and noting: "[Plaintiff] alleges that the defendants' decisions to ignore his zoning application and to file a condemnation proceeding were intended to deter him from his first amendment right of access to the courts. As a result, [plaintiff] alleges a violation of some other substantive constitutional right and satisfies the invidious or irrational decision test"); *Koncelik v. Town of E. Hampton*, 781 F. Supp. 152, 158 (E.D.N.Y. 1991) (denying motion to dismiss procedural due process claim in zoning case where decisions of Planning Board were alleged to be, among other things, arbitrary and capricious and in contravention of the Town Code). Accordingly, plaintiff has alleged a plausible substantive due process claim, and defendants' motion to dismiss this claim on that ground is denied.

2. Procedural Due Process Claim

Plaintiff also argues that it was denied its right to appeal the dismissal of its Article 78 proceeding as the result of coercion from defendants, who refused to approve plaintiff's tenant's permit applications unless plaintiff withdrew its appeal and agreed to revision of the 1982 Special Permit. Defendants argue that plaintiff had an opportunity to challenge the denial of the special permit but instead *voluntarily* withdrew its state court appeal in order to reap the benefit of the $10 million sale of the subject property. (Opp. at 7.) Plaintiff contends that the defendants coerced and extorted plaintiff into abandoning its clearly established rights by attacking the plaintiff's golf course tenant, Rugby.

In order to assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Employees, UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted). In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of "'an opportunity . . . granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971).

As discussed extensively *supra*, plaintiff has sufficiently alleged the existence of a property right—specifically, plaintiff alleges a sufficient property interest in the previously granted 1982 Special Permit, which permitted the landowner to construct a health spa on the subject property. Plaintiff alleges that the Town and its administrative arms deprived it of its right, per the 1982 Special Permit, to build a health spa on the subject property by behavior that was arbitrary, irrational, and conscience shocking. Plaintiff further alleges that although it attempted to challenge defendants' actions in an Article 78 proceeding, it was denied its opportunity to appeal from that proceeding due to coercion

and threats from the defendants. The Court concludes that plaintiff has adequately alleged a procedural due process violation, because it was allegedly denied the opportunity to challenge the denial of its applications by defendants—and the allegedly incorrect outcome of the Article 78 proceeding—on appeal. *See, e.g.*, *Koncelik*, 781 F. Supp. at 158 (denying motion to dismiss procedural due process claim in zoning case despite availability of Article 78 procedure because "although plaintiffs timely and successfully availed themselves of the Article 78 proceeding (as to the Planning Board claim), their plans to develop their property are still being delayed by the ZBA's and the Planning Board's pending appeal"); *accord Acorn Ponds v. Village of North Hills*, 625 F. Supp. 688, 690-91 (E.D.N.Y. 1985) (denying motion to dismiss procedural due process claim in zoning decision, despite fact that plaintiff was able to obtain orders in Article 78 proceeding, because such remedies were inadequate given the delay in obtaining the certificates of occupancy). Accordingly, the motion to dismiss the procedural due process claim for failure to state a claim is denied.

### 3. First Amendment Claim

Plaintiff argues that defendants' actions interfered with its constitutional right of unfettered access to the courts in order to petition the government for the redress of grievances. Specifically, plaintiff alleges that the defendants hindered plaintiff's efforts to pursue a legal claim and retaliated against plaintiff for exercising its constitutional rights to file an Article 78 proceeding. As set forth below, the Court concludes that plaintiff has asserted a plausible First Amendment retaliation claim.

The elements of a First Amendment retaliation claim are dependent on the "factual context" of the case. *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). In the context of a private citizen's action against public officials, the plaintiff must show that: "(1) [it] has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [plaintiff's] First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

Plaintiff has adequately alleged an interest protected by the First Amendment: its right to petition the government for the redress of grievances, as explicitly afforded by the First Amendment. This includes the right to use the legal/judicial process to seek redress for wrongs. *See, e.g.*, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) ("The rights to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment." (collecting cases)); *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (same); *see also United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n.*, 389 U.S. 217, 222 (1967) (right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights" and is "intimately connected . . . with the other First Amendment rights of free speech and free press").

The Second Circuit has noted that:

The ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint. Gagliardi, 18 F.3d at 195; *see Murphy*

*v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) (per curiam); *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979). It is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred. *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994); *see Murphy*, 833 F.2d at 108. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[m]alice, intent, knowledge and other conditions of mind . . . may be averred generally." *E.g.*, *Gagliardi*, 18 F.3d at 195.

*Dougherty*, 282 F.3d at 91. Here, plaintiff has alleged sufficient facts to state a plausible claim for First Amendment retaliation. *See, e.g.*, *Gagliardi*, 18 F.3d at 195 (finding causation nexus satisfied when plaintiff alleged that defendants "'undertook a purposeful aggravated and persistent course of conspiratorial noncompliance and nonenforcement of the pertinent municipal, zoning, noise and safety ordinances, rules, regulations and laws' in 'response' to the Gagliardis' efforts to remedy Lumelite's violations and that the Municipal Defendants have undertaken 'a long series of purposeful, retaliatory and conspiratorial actions . . . in violation of [the Gagliardis'] constitutional civil rights.'"). Specifically, plaintiff alleges that the defendants "threatened representatives of plaintiff's tenant, Rugby, that if Soundview did not withdraw its appeal and its applications for use and construction of the health spa, Rugby's applications for the clubhouse would be derailed." (Compl. ¶ 24.)

Finally, plaintiff alleges that its speech was chilled as a result of the defendants' actions. The Court must "conduct an inquiry into whether plaintiff's speech was actually chilled by the retaliatory conduct." *Saleh v. City of N.Y.*, No. 06-CV-1007, 2007 WL 4437167, at *3 (S.D.N.Y. Dec. 17, 2007). Actual chilling must be established by "a change in behavior" because "a subjective chill cannot serve as a substitute for a specific objective harm." *Aretakis v. Durivage*, No. 07-CV-1273, 2009 WL 249781, at *21 (N.D.N.Y. Feb. 3, 2009) (citing *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)); *accord Curley*, 286 F.3d at 73. Here, plaintiff has adequately alleged that it changed its behavior due to defendants' alleged retaliation. Specifically, plaintiff alleges that, if Rugby did not exercise the $10 million option to purchase, it would have been "financially ruinous for Soundview as it would have lost out on the [$10 million] purchase price, and it would have been left without an operator of the golf course or any way to generate income to service the extensive mortgage debt owed on the golf course property." (Compl. ¶ 136.) Plaintiff further alleges that "[e]ffectively, the Town held Rugby's applications hostage unless and until Soundview withdrew its appeal and its applications, unlawfully extorting Soundview to abandon its vested rights to a health spa, as previously granted by the Town," and that "[d]ue to the financial ruin it would have endured as a result of the Town's threat of refusal to process Rugby's applications, on or about January 29, 2007, Soundview was forced to accede to the Town's demands and withdrew its appeal and applications." (Compl. ¶¶ 137-38.) Thus, the Court concludes that plaintiff's allegations, at this stage, are sufficient to state a claim for First Amendment retaliation.[5]

---

[5] At oral argument, counsel for defendants acknowledged that a plausible cause of action could exist if the Town Board's delay in processing the plaintiff's application for the health spa was in retaliation for the Article 78 proceeding

As the Eighth Circuit noted in *Harrison v. Springdale Water & Sewer Commission*, 780 F.2d 1422 (8th Cir. 1986):

> An individual's constitutional right of access to the courts cannot be impaired, either directly . . . or indirectly, by threatening or harassing an [individual] in retaliation for filing lawsuits. It is not necessary that the [individual] succumb entirely or even partially to the threat as long as the threat or retaliatory act was intended to limit the [individual's] right of access. The cases from this Circuit, as well as from others, make it clear that state officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future. . . . An individual is entitled to free and unhampered access to the courts.

*Id.* at 1427-28 (internal quotations and citations omitted); *accord Greenwich Citizens Comm. v. Counties of Warren*, 77 F.3d 26, 31 (2d Cir. 1996) (citing *Harrison*); *see also Rosedale v. Lejeune*, 233 F. App'x 51, 52-53 (2d Cir. 2007) (noting that, if properly exhausted, a First Amendment retaliation claim may exist where plaintiff claimed, among other things, that zoning board failed

to enforce zoning laws regarding a cell phone antenna adjacent to his property and such failure was in retaliation for his First Amendment activity); *Brown v. Stone*, 66 F. Supp. 2d 412, 433-37 (E.D.N.Y. 1999) (denying motion to dismiss First Amendment retaliation claim where plaintiffs alleged that New York State Office of Mental Health had assessed full charges in response to lawsuits brought by them in State Supreme Court against OMH employees).

Accordingly, plaintiff has stated a plausible First Amendment retaliation claim—namely, that the defendants took the position that the Town "would not process Rugby's application for site plan approval of the new clubhouse unless and until [plaintiff's] appeal with the Appellate Division and its applications with the Town for the proposed health spa were withdrawn" (Compl. ¶ 129)—and the motion to dismiss this cause of action for failure to state a claim is denied.

### 4. Personal Involvement of Individual Defendants

#### a. Standard

To state a claim for individual liability under § 1983, "a plaintiff must demonstrate a defendant's *personal* involvement in the alleged discrimination in order to establish a claim against such defendant in his individual capacity." *Valenti v. Massapequa Union Free Sch. Dist.*, No. 09-CV-977 (JFB) (MLO), 2010 WL 475203, at *8 (E.D.N.Y. Feb. 5, 2010) (citation omitted) (emphasis in original); *see Iqbal*, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has

---

and was improperly linked to Rugby's applications for a clubhouse. However, counsel argued that no such retaliation or improper linkage of decisions occurred in the instant case. Although the Court recognizes that defendants dispute the factual assertions in the complaint, these types of factual issues cannot be resolved by the Court at the motion to dismiss stage.

violated the Constitution."); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("Absent some personal involvement by [a defendant] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983." (citation omitted)); *see also Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) ("The bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a plaintiff's § 1983] claim." (collecting cases)). "[M]ere bald assertions and conclusions of law do not suffice." *Davis v. County of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) (citation and internal quotation omitted).

### b. Individually Named Defendants

Defendants contend that the claims against individual defendants Ehlers and Thomas should be dismissed because it is not alleged that these two defendants acted in any way to deprive the plaintiff of any constitutionally protected rights; rather, according to defendants, the only claims against Ehlers and Thomas are that they "were ordered to convey the alleged ultimatum to the plaintiff at the direction of others." (Opp. at 8.) Defendants argue that Ehlers and Thomas have no decisionmaking authority with respect to land use applications in the Town. For the reasons set forth below, the Court concludes that plaintiff has made sufficient allegations against these defendants to survive defendants' motion to dismiss.

Plaintiff has made several allegations regarding defendants Ehlers and Thomas. For example, plaintiff alleges specifically that "defendant EHLERS AND THOMAS unequivocally told Rugby's Manager that the Town would not process Rugby's application for site plan approval of the new clubhouse unless and until Soundview's appeal with the Appellate Division and its applications with the Town for the proposed health spa were withdrawn." (Compl. ¶ 129.) Thus, plaintiff's complaint alleges that these defendants were personally involved in the deprivation of plaintiff's constitutional rights and delivered the unlawful ultimatums to plaintiff. Accordingly, the motion by defendants Ehlers and Thomas to dismiss the claims against them on this ground is denied.

### c. John & Jane Does #1-6

Defendants move to dismiss the claims against the John & Jane Does #1-6 for failure to allege sufficient individual involvement to state a claim. The complaint alleges that "[u]pon information and belief, defendants Ehlers and Thomas were ordered, directed and or influenced by one or more defendants John Does/Jane Does #1-6 who were officials, agents, and or employees of the Town of Riverhead, to issue this unlawful ultimatum to Rugby's representatives." (Compl. ¶ 87; *id.* ¶ 131.) The complaint further alleges that "the John and Jane Doe defendants were clothed with authority of being employees, elected and/or appointed officials of the Town of Riverhead," and that "in committing the acts described herein, defendants John Does/Jane Does were persons acting under color of state law within the purview of 42 U.S.C. § 1983." (*Id.* ¶¶ 110, 115; *see also id.* ¶¶ 18-19, 116, 118.) Plaintiff further alleges that the actions of John Does/Jane Does #1-6 "constituted the Town's official policy." (*Id.* ¶ 119.)

The allegations against the John and Jane Doe defendants in the complaint are conclusory and non-specific. At oral argument, plaintiff's counsel noted that the claims against the John and Jane Doe defendants were included as "placeholders";

plaintiff's counsel agreed to withdraw those claims without prejudice. Accordingly, the claims against the John and Jane Doe defendants are dismissed at this stage, without prejudice to apply for leave to amend the complaint to add additional named defendants at the conclusion of discovery, if warranted.

c. Town Board and Planning Department

Plaintiff alleges causes of action against the Town Board and the Planning Department as defendants. Defendants allege that the Town Board and the Planning Department lack the capacity to be sued. Specifically, defendants point out that the Town Board and the Planning Department are merely administrative arms of the municipality. "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *See Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claim against Lynbrook Police Department); *see also Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Because plaintiff has named the City of White Plains as a defendant, any claims against the [White Plains Department of Public Safety] are redundant. WPDPS does not have its own legal identity, and therefore the claims against it are dismissed."); *Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214, 216 (S.D.N.Y. 1999) ("[M]unicipal departments in this State—such as the Clarkstown Police Department—are not amenable to suit, and no claims can lie directly against them."). Plaintiff's allegations against the Town Board and the Planning Department are more properly raised in claims against the Town of Riverhead. Accordingly, the Town Board of

Riverhead and the Planning Department of the Town of Riverhead are dismissed as defendants from this action.

5. Qualified Immunity

Defendants also argue that defendants Ehlers and Thomas are entitled to qualified immunity for actions taken in their official capacity. The Court concludes that it is unable to determine whether qualified immunity applies to the individual defendants' actions at this juncture. Accordingly, the motion to dismiss the claims against Ehlers and Thomas on this ground is denied.

"Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). The Second Circuit has held that "a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (internal quotation omitted). This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal citations omitted).

According to the Second Circuit, government actors may be shielded from

liability for civil damages if their "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell*, 316 F.3d at 385; *see also Fielding v. Tollaksen*, 257 F. App'x 400, 401 (2d Cir. 2007) ("The police officers in turn, are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law."). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, — U.S. — , 129 S. Ct. 808, 815 (2009) (internal quotation marks and citations omitted).

As the Second Circuit has also noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (quotation omitted)). Thus, qualified immunity, just like absolute immunity, is not merely a defense but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the availability of qualified immunity should similarly be decided by a court "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Still, the Second Circuit has emphasized that "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). In addition, in such situations, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Holmes v. Poskanzer*, 342 F. App'x 651, 652 (2d Cir. 2009) (quoting *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008)); *accord Shechter v. Comptroller of City of N.Y.*, 79 F.3d 265, 269 (2d Cir. 1996).

In the instant case, the complaint alleges that defendants Ehlers and Thomas engaged in actions that constituted a "misuse of power" that each "possessed by virtue of local law." (Compl. ¶¶ 100, 106.) In particular, as noted above, it is alleged in the complaint that these two defendants were involved in the alleged decision by the Town, in bad faith, to arbitrarily and unlawfully deny Soundview the ability to construct a health spa on the property by way of the 1982 Special Permit it had been granted, and then to retaliate against Soundview by refusing to process Rugby's application unless Soundview dropped its appeal and withdrew its separate health spa application. If all of these facts are proven, as alleged in the complaint, the individual defendants would not be protected by qualified immunity because these are all clearly established rights and it would not be objectively reasonable for an official to believe that such conduct did not violate plaintiff's rights.

Defendants dispute these allegations in their opposition and contend that the actions of Ehlers and Thomas were reasonable. According to defendants, the SEQRA and site plan review process would have been completely undermined if Rugby's site plan application had been processed without knowing whether the health spa would also be

constructed on the property because such a facility would have had a substantial impact on the SEQRA and site plan reviews. However, the reasonableness of defendants' actions involves determinations of fact cannot be resolved in at this motion to dismiss stage in this particular case given the allegations in the complaint, which must be accepted as true for purposes of the qualified immunity analysis. (Compl.¶¶ 28, 33, 35-38.) *See Dicks v. Binding Together, Inc.*, No. 03 Civ. 7411(HB), 2007 WL 1462217, at *10 (S.D.N.Y. May 18, 2007) ("Regarding the 'objective reasonableness' of Defendants' actions, while the 'use of an 'objective reasonableness' standard permits qualified immunity claims to be decided as a matter of law,' *see Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir. 1992), the determination 'usually depends on the facts of the case . . . making dismissal at the pleading stage inappropriate.'"); *Tyson v. Willauer,* No. 3:01CV1917 (GLG), 2002 WL 31095285, at *2 (D. Conn. July 10, 2002) ("On a motion to dismiss, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness. Objective reasonableness would be a defense to Count One; however, at this early stage in the litigation, the question of whether defendant's conduct was objectively reasonable or not involves a factual dispute which cannot be resolved on a motion to dismiss. Accordingly, the motion is denied without prejudice and plaintiffs are permitted to conduct discovery limited to the issue of defendant's qualified immunity claim." (internal citation and quotations omitted)).

In short, given the assertions in the the complaint regarding the alleged intentional violation of plaintiff's constitutional rights by the individual defendants, the Court cannot say at this juncture that defendants are entitled to qualified immunity. *See, e.g.*, *Serfecz v. Gallitano*, No. 95 C 5140, 1996 WL 6557, at *6-7 (N.D. Ill. Jan. 5, 1996) (denying motion to dismiss on qualified immunity grounds and describing motion as "frivolous" at that stage of the litigation where plaintiff claimed village officials tried to coerce plaintiff into dropping antitrust lawsuit and tried to prevent plaintiff's redevelopment of a shopping center). Accordingly, defendants' motion to dismiss the claims against Ehlers and Thomas is denied. Of course, following discovery, defendants Ehlers and Thomas are free to move for summary judgment on such grounds if warranted based upon the facts, or lack of facts, uncovered during discovery in connection with plaintiff's claims.

IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Specifically, the Court grants defendants motion to dismiss plaintiff's claims under the Fifth Amendment. The Court also grants defendants' motion to dismiss claims against the Town Board and the Planning Department, as duplicative of the claims raised against the Town of Riverhead. The Court denies defendants' motion to dismiss plaintiff's substantive due process, procedural due process, and First Amendment claims. Defendants are directed to file answers to the complaint within twenty days of this Memorandum and Order, and the parties are directed to proceed with discovery in accordance with the direction of Magistrate Judge Tomlinson.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 14, 2010
Central Islip, New York

*   *   *

The attorney for plaintiff is David
Antwork of Campanelli & Associates, 129
Front Street, Mineola, NY 11501. Defendants
are represented by Phil Siegel of Smith,
Finkelstein, Lundberg, Isler & Yakaboski,
LLP, 456 Griffing Avenue, P.O. Box 389,
Riverhead, NY 11901.